IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

          V.          :          CRIMINAL NO. 16-417

    DEVIN MARINO          :


<u>ORDER</u>

AND NOW, this          day of                    2017, upon consideration of the

motion of the government and the presentation of the defense, the Court orders that any

defense evidence of the defense of justification is inadmissible. The Court finds that the

defendant has failed to make the following required showing:


BY THE COURT:


_____

HONORABLE GERALD J. PAPPERT
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

V.          :          CRIMINAL NO. 16-417

DEVIN MARINO          :

GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE DEFENSE OF JUSTIFICATION

The government anticipates that the defendant will attempt to offer a defense of justification. He may try to do so either by presenting direct evidence, or through the cross examination of witnesses. The government suggests this for several reasons. First, the defendant has explained his conduct on several occasions as being prompted by the fact that when he had sex with the victim, the victim failed to tell him that he had tested positively for Hepatitis B. When he sent the e-mail attaching the victim's medical records to many others on January 7, 2016 (Indictment Count One, Paragraph 14; Count 12), that was the implicit reason for distributing the medical information.[1] It was also part of his explanation for sending the records to a Virginia State Police sergeant on May 16, 2016.[2] He further stated in

_____

[1] That e-mail contained the following paragraphs:

> If you can provide any email conversations you had with this man, it could be very helpful in getting justice on this evil prick.

> Attached is a Lap Corp test result. Please do not publish or transmit this to anyone. It is has confidential information. You are only receiving this so that you are motivated to get tested if you have be in contact with this individual.

[2] The e-mail to Sergeant Smith of the Virginia State police was more direct. It contained the following two paragraphs:

Footnote continued on following page

the e-mail to the Virginia State Police sergeant that he believed that the victim had been in a sexual relationship with a minor.

In addition, defense counsel has asked for information about this minor. In his request, counsel noted, "Mr. Marino has told the agents that this misconduct [of the victim] was a catalyst for Marino's subsequent activity." Counsel wanted to follow up on this issue because these facts might be evidence of "Marino's state of mind for doing what he did." Because the government believes that justification is not a defense to any of the crimes charged and because, in any event, the defendant cannot show the required elements of such a defense, the government requests a pretrial determination of this issue.

There are several ways in which the defendant may try to use these facts. He may claim that they form an affirmative defense of justification. For example, he may claim that because of what the victim did to him, he was entitled to commit these acts. In the alternative, he may claim that to prevent the victim from infecting people or from having sex with minors, he was entitled to commit these crimes. A different tactic would be to use these facts to impeach the credibility of the victim as a witness, by seeking to present such evidence either directly, or through cross-examination. Because none of these avenues is permissible, the government files this motion to exclude such evidence. We will discuss why these different means of presenting these facts are impermissible.

---

November 2014, two weeks after I had unprotected sex with him, he tells me that he had Hepatitis B. When I first met William he told me he was disease free.

The combination of him trying to have sex with young guys who looked 16-18 yr old, and lying to them about his std status, caused me to confront him to make it stop.

Affirmative Defense

Modern federal law on the defenses of duress, coercion, and justification begins with *United States v. Bailey*, 444 U.S. 394 (1980). In that case, a group of prisoners escaped from the District of Columbia jail and remained at large for some time. They were caught and tried in two separate trials. At the first trial, the defendants presented several days of testimony about poor prison conditions that they asserted justified their escape. The trial judge did not instruct the jury on the defense however, because the defendants did not present evidence that once they had escaped from the intolerable conditions, they promptly surrendered to authorities. At the trial of the remaining defendant, the district court excluded the proffered evidence on prison conditions because the defendant would not be able to prove prompt surrender. The Court of Appeals reversed the convictions and the Supreme Court then reversed the Court of Appeals.

In reaching its decision, the court initially stated the first requirement of such a defense.

> We need not speculate now, however, on the precise contours of whatever defenses of duress or necessity are available against charges brought under § 751(a). Under any definition of these defenses, one principle remains constant: if there was a reasonable, legal alternative to violating the law, "a chance both to refuse to do the criminal act and also to avoid the threatened harm," the defenses will fail. LaFave & Scott 379. Clearly, in the context of prison escape, the escapee is not entitled to claim a defense of duress or necessity unless and until he demonstrates that, given the imminence of the threat, violation of § 751(a) was his only reasonable alternative.
> *United States v. Bailey*, 444 U.S. at 410–11 (footnotes omitted)

In addition, the Court held that prompt surrender is also a requirement and that it is an independent and necessary requirement.

> On the contrary, several considerations lead us to conclude that, in order to be entitled to an instruction on duress or necessity as a defense to the crime

3

charged, an escapee must first offer evidence justifying his continued absence from custody as well as his initial departure and that an indispensable element of such an offer is testimony of a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force. *Id.*, 444 U.S. at 412–13,

Finally, as a matter of procedure, the Court held that a district court may order that the defendant must present evidence of one of the elements as a precondition of allowing in other evidence, if that will save time.

As a general practice, trial courts will find it saves considerable time to require testimony on this element of the affirmative defense of duress or necessity first, simply because such testimony can be heard in a fairly short time, whereas testimony going to the other necessary elements of duress or necessity may take considerably longer to present. Here, for example, the jury heard five *days* of testimony as to prison conditions, when in fact the trial court concluded, correctly, that testimony as to another essential element of this defense did not even reach a minimum threshold such that if the jury believed it that element of defense could be said to have been made out. But trial judges presiding over indictments based on § 751(a) are in a far better position than are we to know whether, as a matter of the order of presenting witnesses and evidence, testimony from a particular witness may be allowed "out of order" subject to avowal, proffer, and the various other devices employed to avoid wasting the time of the court and jury with testimony that is irrelevant while at the same time avoiding if possible the necessity for recalling or seriously inconveniencing a witness.
*Id.*, 444 U.S. at 413 n.9 (emphasis in original).

If, as we here hold, an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense.
*Id.*, 444 U.S. at 416.

The Court of Appeals has spelled out the full extent of the justification defense in *United States v. Taylor*, 686 F.3d 182, 186 (3d Cir. 2012). Quoting from the Court's Model Jury Instruction § 8.04, the court wrote the following:

First, that [the defendant] was under an immediate, unlawful threat of death or serious bodily injury to himself or to others;

Second, that [the defendant] had a well-grounded [or reasonable] fear that the threat would be carried out if he did not commit the offense;

Third, that [the defendant's] criminal action was directly caused by the need to avoid the threatened harm and that [the defendant] had no reasonable, lawful opportunity to avoid the threatened harm without committing the offense; that is, that [the defendant] had no reasonable lawful opportunity both to refuse to do the criminal act and also to avoid the threatened harm; and

Fourth, that [the defendant] had not recklessly placed himself in a situation in which he would be forced to engage in criminal conduct.
Id.

The burden of proof of these defenses is on the defendant to prove these elements by a preponderance of the evidence. *Dixon v. United States*, 548 U.S. 1 (2006) (duress); *United States v. Taylor*, 696 F.3d 182 (just cause or excuse).

The government submits that on the facts of this case, the defendant cannot prove any of the elements of the defense. The defendant would have to show that he committed these acts because someone threatened to kill or seriously injure him. He cannot assert that in this case.

Cross Examination of the Victim

The defendant may seek to get some of this evidence in through cross-examination of the victim. He cannot do so to establish the defense for the reasons set forth above. Cross examining the victim about his health or about sex with minors for the purpose of justifying the defendant's conduct is merely a different way of offering evidence on a matter that is not a "fact of consequence" within the meaning of Rule 401 and therefore is not relevant. It would be a back door way of presenting an otherwise prohibited defense.

The defendant may argue that he is doing so to impeach the credibility of the witness. Such questioning would not be a valid basis of impeachment. To the extent that it is offered to smear the victim as a loathsome person, Rule 404(a)(1) prohibits evidence of a person's character or character trait to prove that on a particular occasion the person acted in accordance with the character or trait. There is an exception for a defendant to offer evidence of a victim's character trait, subject to the limitations of Rule 412, but the character trait must be "pertinent." Rule 404(a)(2)(B). This usually applies in cases involving acts of violence where the defendant asserts that s/he acted in self-defense and the victim was the aggressor. *E.g., United States v. Jackson*, 852 F.3d 764 (8th Cir. 2017). The term "pertinent" is synonymous with "relevant." *E.g. United States v. Staggs*, 553 F.2d 1073, 1075 (7th Cir. 1977); *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. Unit A 1981); *United States v. Angelini*, 678 F.2d 380, 381 (1st Cir. 1982). The fact that the victim had hepatitis or was accused of having sex with minors does not make any fact of consequence in this case more likely or less likely. That is the minimum requirement of relevance under Rule 401. , *United States v. Starnes*, 583 F.3d 196, 213-214 (3d Cir. 2009) ("Evidence is irrelevant only when it has no tendency to prove a consequential fact.") (Internal quotations and citations omitted). Since justification is not a defense, this evidence meets the *Starnes* test – it fails to prove any consequential fact.

Furthermore, having an illness is not a character trait. It is a medical condition. Assuming that the victim was disposed to having sex with minors, the only "character trait" that could go to would be a propensity to commit crimes. That is precisely what Rule 404(b)(1) prohibits. *United States v. Caldwell*, 760 F.3d 267 (3d Cir. 2014); *United States v. Brown*, 765 F.3d 278 (3d Cir. 2014). Such evidence is admissible only if it is offered for

6

another, proper purpose. *United States v. Repak*, 852 F.3d 230 (3d Cir. 2017). Since this evidence does not go to any fact of consequence, there is no proper purpose for it.

The defendant might also want to cross-examine the victim with such an accusation to impeach his credibility. However, Rule 608 governs such evidence. That rule limits evidence to evidence that would impeach a witness' reputation for having a character for <u>truthfulness or untruthfulness</u>. Under this rule, a party may offer reputation or opinion evidence about a witness' reputation only to attack with witness' veracity. Rule 608(a). However, if one wishes to ask a witness about specific instances of conduct, those instances must be limited to those that are "probative of the character for truthfulness or untruthfulness." Furthermore, the questioner must accept the answer. Rule 608(b) prohibits the offering of extrinsic evidence of such specific instances. *Carter v. Hewitt*, 617 F.2d 961, 969 (3d Cir. 1980); *United States v. Bocra*, 623 F.2d 281, 288 (3d Cir. 1980). Thus, both cross-examination and extrinsic evidence of the type the defendant would offer here are barred.

Even if the court should conclude that Rule 608(b) does not bar such evidence, and that the evidence passes the minimal bar to qualify as relevant, the government suggests that the Court should exclude such evidence under Rule 403. Such evidence would be unduly prejudicial to the government by suggesting that the jury should evaluate the victim's credibility on an emotional basis. The Advisory Committee Notes to Rule 403 specifically define "unfair prejudice" to mean, "having an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Whether the victim suffers from a disease, or has committed a sex crime does not permit this defendant to do the acts charged in the Indictment. When the effect of this evidence is weighed against its

minimal relevance, the balance should fall on the side of exclusion. For similar reasons, such evidence will confuse the issues and waste time.

<u>CONCLUSION</u>

For these reasons, the government requests that the Court exclude any evidence of justification or excuse as a motivation for the defendant to commit these offenses and bar any questioning designed to elicit facts that would make a suggestion that in some way his conduct was justified.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney


<u>/s/ Michael L. Levy</u>
MICHAEL L. LEVY
Assistant United States Attorney
Chief, Computer Crimes

8

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of The Government's Motion in Limine to Exclude Defense of Justification upon the following by filing it with the Court's Electronic Case Filing System:

Stephen J. Britt, Esq.
P.O. Box 1746
Blue Bell, PA 19422-0476.

/s/ Michael L. Levy
MICHAEL L. LEVY

April 26, 2017

9